In re McFERREN et al.
No. 2219.

District Court, E. D. Illinois.

Aug. 29, 1933.

Dyer & Dyer and Robert Rodman, all of Hoopeston, Ill., for petitioners.

Gunn, Penwell & Lindley, of Danville, Ill., for William McFerren and others.

LINDLEY, District Judge.

This proceeding was instituted by the debtors for administration of their estates under the recent amendments to the Bankruptcy Act (see 11 USCA § 201 et seq.), by virtue of which without adjudication they entrust the administration of their estates to the court in accordance with the terms of the act.

Upon motion of present petitioners, a custodian was appointed, who has duly qualified. The petitioners now present to the court their petition asking that Referee Walter J. Grant be disqualified and a special referee appointed.

This petition is verified by creditors of the debtors. It states that they have given the matter due consideration, and that they have,

after considering the same, arrived at the conclusion that it is their honest belief that they cannot have a fair and impartial trial of the matters and things involved in this proceeding before the said referee. No facts upon which said conclusion is based are presented.

Under the Bankruptcy Law, section 39 (b), 11 USCA § 67 (b), referees may not act in cases in which they are directly or indirectly interested. They may not hold any office of profit or emolument under the laws of the United States or of any state, with certain exceptions not here material. They must not be related by consanguinity or affinity within the third decree, as determined by the common law, to any district judge or circuit judge of the jurisdiction in which they live. They may not practice in bankruptcy nor purchase bankrupt assets. They should not be related by blood or affinity to any of the parties involved in the controversy. .

The statute as interpreted by the courts has not put further inhibition upon the action of the referee, nor has it further specifically defined any cause for disqualification. Obviously what should amount to disqualification depends upon the particular facts of each case, and presents a question for the exercise of judicial discretion by the court or the referee.

Perhaps the best guide to what should be good cause for disqualification of referees is to be found in the federal statute providing for disqualification of judges and the judicial interpretation thereof by the courts. The statute mentioned, 28 USCA § 25, provides that whenever a party to any action or procedure shall make and file an affidavit that the judge before whom the action is to be tried has a personal bias or prejudice either against him or in favor of any opposite party to the suit, the judge shall proceed no further therein. This affidavit, however, shall state the facts and the reasons for the belief that such bias or prejudice exists, and no party shall file more than one such affidavit. The affidavit shall not be filed unless accompanied by a certificate of counsel of record that such affidavit and application are made in good faith. Under this statute Mr. Justice Lurton, in Ex Parte American Steel Barrel Co., 230 U. S. 35, 33 S. Ct. 1007, 1010, 57 L. Ed. 1379, said:

"The basis of the disqualification is that 'personal bias or prejudice' exists, by reason of which the judge is unable to impartially exercise his functions in the particular case. It is a provision obviously not applicable save in those rare instances in which the affiant is able to state facts which tend to show not merely adverse rulings already made, which may be right or wrong, but facts and reasons which tend to show personal bias or prejudice. It was never intended to enable a discontented litigant to oust a judge because of adverse rulings made, for such rulings are reviewable otherwise, but to prevent his future action in the pending cause."

In Ex parte N. K. Fairbank Co. (D. C.) 194 F. 978, 989, the court defined at some length the proper attitude of judicial officers, saying: " 'Prejudice or bias,' in the ordinary sense of the term, and not censurable in its character, may arise from innumerable conditions in life. A man ordinarily has a bias in favor of the political party to which he belongs, or a prejudice in some degree against its opponents. The same thing is true in a degree as to the church of which he is a member, and he is generally prejudiced or biased more or less about his race, his country, and its institutions. He cannot avoid forming to some extent bias or prejudice regarding men and affairs in nearly every matter as to which he has to inform his judgment or regulate his conduct in the walks of daily life. He must have neighbors, friends, and acquaintances, business and social relations, and be a part of his day and generation. Evidently the ordinary results of such associations and the impressions they create in the mind of the judge are not the 'personal bias or prejudice' to which the statute refers. The impressions, whether favorable or unfavorable, of men, which a judge receives, or his convictions about them growing out of his contact or acquaintance with them in the ordinary walks of life, cannot fall within the evil the statute designs to suppress, unless they are so strong that they result in personal bias or prejudice as to individual suitors, dominating the judge to such an extent that they beget a mental or moral condition which makes the judge willing to do wrong although he sees the right, regarding the justiciable matters brought before him, or else, though the judge's intentions be good, render him incapable of rightly seeing the justice of the cause, or impartially enforcing the right involved as between the parties to the suit."

In Berger v. U. S., 255 U. S. 22, 41 S. Ct. 230, 65 L. Ed. 481, the Supreme Court held that the reasons and facts stated in an affidavit charging a judge with bias or prejudice for the belief in such bias or prejudice are an essential part of the affidavit, and must give fair support to the charge of a bent of

mind that may prevent or impede impartiality of judgment.

In the present instance no facts or reasons of any character supporting any conclusion of bias, prejudice, or other ground for disqualification is presented to the court. We have merely the conclusion or opinion of the petitioners to the effect that they do not believe they can obtain proper judicial action.

Under the statute quoted, under the authorities interpreting same, and in conformity with rules governing intelligent action, it is apparent that the court has nothing before it upon which it could legally and properly find that the referee is disqualified.

■ Nor does the court feel impelled to ask the referee to refuse to proceed further in this matter, for it is commonly said that a judicial officer against whom an insufficient showing for recusation has been made owes it to his oath of office and to the litigant who invokes the jurisdiction of his court over which he presides not to withdraw from the case, however much his personal feeling may incline him so to do. See Benedict v. Seiberling (D. C.) 17 F.(2d) 831.

It is obvious in view of the provisions of the act that, if the referee errs in matters of procedure, administration, or interpretation of the law, his action is easily reviewed before the district judge.

Accordingly, it will be the order of the court that petition be and the same is hereby denied.